## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:23-cr-498 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Jonathan D. Greenberg |
| SHYHEIM ROBERSON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>OPINION AND ORDER</u>

Defendant Shyheim Roberson, a self-proclaimed "#GUNTUBER," moves to suppress evidence seized in the search of his residence.  Defendant argues that the affidavit supporting the search warrant contains misleading statements and omits material information.  Without the misleading information, and placing certain information in the affidavit in its full context, he argues that the search warrant lacks probable cause.  He seeks a hearing to develop the record to support these arguments, which the United States opposes.

A court does not review the issuance of a warrant on a clean slate as if deciding whether to authorize a search in the first instance.  Under the deferential standard of review for challenges to warrants, the Court cannot say that the State judge who issued the warrant lacked a substantial basis for his determination of probable cause. For these reasons, and those more fully explained below, the Court **DENIES** the motion to suppress without an evidentiary hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

A grand jury charged Defendant Shyheim Roberson in a two-count indictment with conspiracy to possess machine guns illegally, in violation of 18 U.S.C. § 371, and illegal possession of machine guns, in violation of 18 U.S.C. § 922(o)(1).  (ECF No. 1.) The bulk of the fifteen-page indictment details his communications with foreign arms-dealers about the purchase of Glock switches.  When installed on a Glock-style pistol, these switches convert a semi-automatic weapon to fully automatic fire.  As a result, federal law classifies the switches themselves as a "machinegun."  *See* 26 U.S.C. § 5845(b).  Mr. Roberson has no prior criminal history.

As part of an ongoing investigation into the unlawful possession of Glock switches, a detective with the Cleveland police found Mr. Roberson's social media accounts, specifically his public Instagram account and public YouTube page.  (ECF No. 21-1, ¶¶ 2–3, & 7, PageID #80–82.)  The detective and other members of a joint federal-local task force monitored and documented Mr. Roberson's Instagram account.  (*Id.*, ¶¶ 3 & 12, PageID #81 & #83.)

On January 6, 2023, a State court judge signed a warrant authorizing a search of Mr. Roberson's residence.  (ECF No. 39-1.)  A detective assigned to the Cleveland Division of Police Gang Impact Unit and the FBI Safe Streets Gang Task Force swore out the affidavit.  (ECF No. 21-1, ¶ 1, PageID #80.)  At that time, he had been a detective for one year and nine months and a police officer for four years with the Cleveland Police.  (*Id.*)  Before joining the Cleveland police, the affiant was a police officer for approximately two years in New Orleans.  (*Id.*)

2

After obtaining the warrant, law enforcement conducted a search days later and found electronics, gun cases, gun parts, ammunition, magazines, six guns, and three suspected Glock switches.  (ECF No. 39, PageID #177–78.)  On August 25, 2025, the Court denied Defendant's motion to dismiss the indictment on the authority of *United States v. Bridges*, 150 F.4th 517 (6th Cir. 2025).  (ECF No. 38.)

Defendant moves to suppress the evidence obtained in the search and for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).  Following the close of briefing, the Court heard oral argument on the motion on November 5, 2025. (Minutes, Nov. 5, 2025.)

## ANALYSIS

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend IV.  "'At the very core' of the Fourth Amendment 'stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'"  *Kyllo v. United States*, 533 U.S. 27, 31 (2001) (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)).  "[T]he 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'"  *Payton v. New York*, 445 U.S. 573, 585 (1980) (quoting *United States v. U.S. Dist. Court for E. Dist. of Mich.*, 407 U.S. 297, 313 (1972)).

"To establish probable cause adequate to justify issuance of a search warrant, the governmental entity or agent seeking the warrant must submit to the magistrate an affidavit that establishes 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010) (quoting *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009)). Probable cause is "not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014). It means "reasonable grounds for belief, supported by less than prima facie proof, but more than mere suspicion." *United States v. Lattner*, 385 F.3d 947, 951 (6th Cir. 2004) (cleaned up); *see also United States v. Padro*, 52 F.3d 120, 122–23 (6th Cir. 1995) (citing *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). Ultimately, the determination of probable cause involves a practical, commonsense review of the totality of the available facts and circumstances. *Padro*, 52 F.3d at 123 (citations omitted). Probable cause must persist from "the time the judge issues the warrant" through "the time officers execute it." *United States v. Sheckles*, 996 F.3d 330, 339 (6th Cir. 2021) (citation omitted).

I.  **Standard of Review**

Ordinarily, a court affords a determination of probable cause "great deference." *United States v. Asker*, 676 F. App'x 447, 456 (6th Cir. 2017) (quoting *United States v. Leon*, 468 U.S. 897, 914 (1984)); *see also United States v. Abernathy*, 843 F.3d 243, 250 (6th Cir. 2016) (quoting *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc)). A reviewing court does not scrutinize the issuance of a warrant after the fact under a *de novo* standard, which would be inconsistent with the Fourth

Amendment's strong preference for searches conducted pursuant to warrants. *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (quotation omitted).

The issuing judge must make "a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.*, at 238. When reviewing that determination, the Court simply ensures that the magistrate judge had a substantial basis for concluding that probable cause supported the warrant. *Id.*, at 238–39; *see also United States v. Alfano*, 838 F.2d 158, 162 (6th Cir. 1988) (quoting *United States v. Lambert*, 771 F.2d 83, 93 (6th Cir. 1985)).

"Review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit." *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006) (citing *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)). In addition to the facts in the affidavit, a reviewing court also considers reasonable inferences from those facts. *United States v. McCoy*, 905 F.3d 409, 416 (6th Cir. 2018). In determining whether probable cause supports the issuance of a warrant, a court reviews the significance of each piece of evidence on which the affidavit relies, then the totality of facts and circumstances. *United States v. Christian*, 893 F.3d 846, 854 (6th Cir. 2018). But a court does not engage in line-by-line scrutiny of the affidavit. *United States v. Walling*, 747 F. App'x 382, 385 (6th Cir. 2018) (quoting *United States v. Allen*, 211 F.3d 970, 972–73 (6th Cir. 2000) (en banc)). In conducting its analysis, a court focuses on the factual assertions in the

5

affidavit supporting the warrant, not its conclusory statements from the affiant. *Christian*, 893 F.3d at 859 (citing *United States v. Williams*, 544 F.3d 683, 687 (6th Cir. 2008)).  The responsibility for determining whether probable cause supports a warrant rests with the issuing judge, not the officer seeking the warrant.  *McCoy*, 905 F.3d at 416 (citing *Leon*, 468 U.S. at 919–22).

The results of a search do not factor into the evaluation of whether probable cause supported the issuance of a warrant.  *See United States v. Smith*, 510 F.3d 641, 648 (6th Cir. 2007).  The judge issuing a warrant does not enjoy the same benefit of hindsight as a judge reviewing the search after the fact.  Therefore, the Court gives no consideration to the results of the search of Mr. Roberson's residence.

## II.    Motion to Suppress

In his motion to suppress, Defendant argues that the affidavit contains materially false and misleading statements and omits material information.  (ECF No. 21; ECF No. 41.)  When that false or misleading information is removed and the omitted information is considered, Defendant argues that the affidavit does not establish probable cause.  (ECF No. 21, PageID #70 & #77–78.)

### II.A.1. Instagram Generally

First, Defendant maintains that the affiant omitted "important information" about Instagram, generally, including about its reposting features and incentives to monetize engagement.  (*Id.*, PageID #76–77.)  He points out that finding a photograph or video on an individual's Instagram page "does not mean the owner of that page was involved [ ] in the making of that photograph or video" or that the individual "possessed that object at anytime or even had the ability to possess that object."  (*Id.*)

6

Additionally, Defendant argues that there are "financial reasons" for an individual to post other users' content on their page. (*Id.*, PageID #77.) For those financial reasons, Defendant argues that he posted provocative content and reposted other users' content to his own Instagram page to boost his followers and earn money. (*Id.*)

The Court acknowledges that the affidavit does not include a summary about how social media generally or Instagram in particular operate or enable users to monetize content. In the Court's view, however, no such background is necessary. Indeed, as licensed lawyers, State judges have an ethical obligation to maintain their technological competence. Ohio Prof. Conduct R. 1.1 cmt. 8 ("To maintain the requisite knowledge and skill, a lawyer should keep abreast of changes in the law and its practice, including the benefits and risks associated with relevant technology[.]"). Absent some reason to think that the State judge who issued the warrant lacked the technological fluency that might make inclusion of this information in a warrant helpful, the Court assumes that, through the faithful discharge of his regular duties, the issuing judge had a sufficient understanding of the workings of social media. The omission of this information does not render the affidavit false or misleading or incomplete.

### II.A.2. Specific Paragraphs of the Affidavit

Also, Defendant claims that the affiant made false or misleading statements or omitted information from individual paragraphs. (ECF No. 21, PageID #73–76.) The Court addresses each in turn.

### II.A.2.a. Paragraph 8

Paragraph 8 of the affidavit supporting the warrant attests that the task force officer reviewed one of Mr. Roberson's YouTube videos that includes a story, which the affiant takes as evidence that Mr. Roberson has or can obtain Glock switches. The paragraph reads:

> Affiant avers he reviewed several of **Shyheim Roberson's** YouTube videos and was drawn to one particular video titled 'Glock 19 GEN 5 Review'.  Within the video, **Roberson** is holding a Glock firearm and states, "I got a funny story about this Glock on my momma. *I am doing something I ain't supposed to be doing with these bitches* ya feel me?" (Emphasis added).  Later within the same video, **Roberson** is holding the Glock up to the camera with the rear end of the firearm in view, and he points with his finger to the slide cover plate.  While pointing at the slide cover plate, **Roberson** states, "Aye y'all peep me though.  It's over with, *I am going to the feds*."  (Emphasis added).  Affiant avers when **Roberson** stated 'going to the feds' while pointing at the slide cover plate, Affiant believes **Roberson** is referring to Glock switches, which are federally illegal.  Affiant avers, based on his experience, he has personally observed Glock handguns that are equipped with switches. In each instance, Affiant avers the switches were attached to the slide cover plate exactly where **Roberson** was pointing in the screen shot (See Exhibit B below).

(ECF No. 21-1, PageID #82.)  A screenshot from the YouTube video was attached to the affidavit:



(*Id.*, PageID #89.)

Defendant argues that the statement about "going to the feds" was "clearly made as a joke in order to gain more subscribers to his [YouTube] videos." (ECF No. 21, PageID #73.) Also, no Glock switch appears in the video. (*Id.*) Further, Defendant argues that the affiant "cherry picke[ed]" the statements about the "funny story" about doing something that he should not be doing. (*Id.*, PageID #74.) Playing the video, the story turns out to be about Mr. Roberson disassembling a firearm and having trouble reassembling it. Defendant argues that the affiant's inclusion of only a portion of the story "leaves the reader with the misimpression that Mr. Roberson was involved with Glock switches." (*Id.*)

The United States argues that had the affiant included the full story in the affidavit instead of only Mr. Roberson's teaser from the beginning of his video, the additional statements would have bolstered a finding of probable cause. By adding

9

two sentences about removing the rear slide plate and the spring popping out, the United States believes that the affidavit would have strengthened the affiant's belief that Mr. Roberson was involved with Glock switches.  Because the additional information would have supported the inference of probable cause, any omission was not to mislead the judge, and Defendant failed to meet his burden under *Franks*.

Defendant has the better of the argument.  In the first ten seconds of the video, Mr. Roberson uses the beginning of the "funny story about this Glock," which he tells at the end of the video, as a teaser.  (ECF No. 21-2, manual filing of Ex. B.)  Roughly six and half minutes into the video, Mr. Roberson states "I am going to the feds" while holding the Glock close to the camera to sharpen the camera's focus on the Glock and pointing to the slide cover plate of the Glock.  Roughly thirteen minutes into the video, Mr. Roberson tells the "funny story" about the Glock.  After the statements in the teaser, Mr. Roberson's next sentence is "I took this back plate off" while pointing to the slide cover plate.  But Mr. Roberson continues to describe how he took his gun apart but could not figure out how to put it back together, so he took apart his friend's gun and nearly broke his gun too. In this respect, the excerpts of the video on which the affiant relies become something of a machine-gun double entendre.

For that reason, the video might give rise to suspicion.  But the Court doubts it can do more.  A busy State judge, however, will likely rely on the affiant's summary of the video, particularly one as long as this one.  Indeed, at oral argument, the United States confirmed that the full video was likely not provided to the judge who signed the warrant.  When proceeding *ex parte*, litigants have heightened duties of candor.

It would not have taken much to provide more complete context for the video.  But that did not occur here.  The parties debate whether, based on his viewing of the YouTube video, the affiant attested to an opinion.  But the Court need not enter that fray.  The Court will simply disregard this paragraph in its entirety in determining whether the affidavit supports probable cause.

### II.A.2.b. Paragraph 9

Paragraph 9 describes a story posted to Mr. Roberson's Instagram account that shows a hand manipulating a Glock switch with an arrow connecting two cellphone emoji on the video.  It states:

> Affiant avers on Tuesday, October 26, 2022, at approximately 1513 hours, he was monitoring **Shyheim Roberson**'s Instagram account **4eg_shobbs** and observed a story post.  On the story, a dark gray handgun, consistent in appearance with the semi-automatic Glock in **Roberson**'s aforementioned YouTube video, is observed resting between a pair of legs with a hand (medium in complexion, consistent with **Roberson**'s skin tone) manipulating a Glock switch's pin back and forth from right to left (See Exhibit C below).  The switch is black/dark gray in color and appears to have the Glock logo engraved upon it.  Affiant avers that the switch is attached on the firearm's slide cover plate, the same position on the firearm that **Roberson** referenced in his Youtube video (as mentioned above).

(ECF No. 21-1, PageID #82–83.)  A screenshot of the Instagram story post was attached to the affidavit:



(*Id.*, PageID #90.)

Defendant concedes that this paragraph contains "indisputable evidence of a Glock switch[]."  (ECF No. 21, PageID #75.)  However, he argues that this switch cannot be tied to Mr. Roberson.  (*Id.*)  The "only things visible" in the post are the Glock switch and the hand.  (*Id.*, PageID #76.)  Because the handgun is not visible, Defendant argues that there is no way for the affiant to conclude that the handgun is consistent in appearance with the Glock that Mr. Roberson possessed in the YouTube video.  (*Id.*)

The United States argues that a comparison of this Instagram story post and Mr. Roberson's YouTube video from March 19, 2023—described in Paragraph 8 of the affidavit—supports the affiant's conclusion that the two firearms are "consistent in appearance."  (ECF No. 39, PageID #191–92.)  The United States adds that the affiant did not exaggerate any similarities between the two firearms and did not state that

they were the same two firearms but rather constrained his conclusion to consistency in appearance.  (*Id.*, PageID #192–93.)

The Court agrees that it does not matter whether the hands in this photo and video are Mr. Roberson's.  While Mr. Roberson is not identifiable in the post, he did post the photos to his personal Instagram account.  Even if not his, he posted the image of the Glock switch on his account with arrow and cell phone emoji that can reasonably be interpreted as solicitations.  They appear to communicate the message: if you are interested in a Glock switch, use your phone to hit me up.  The identity of the hands does not change the message of the post, which properly figures into the determination of probable cause.

### II.A.2.c. Paragraph 10

Paragraph 10 describes a story posted to Mr. Roberson's Instagram account that the affiant interpreted as an advertisement for a Glock with a switch:

> Affiant avers on Monday, November 7th, 2022, at approximately 1817 hours, he was monitoring **Shyheim Roberson**'s Instagram account **43g_shobbs** and observed another story post.  Affiant avers the story post displayed a green background with the script that stated, "G19 w a switch $1100 who want it" and an emoji of a pair of eyes below the script.  Affiant avers the word "switch" on the story post is partially covered with red coloring in [an] attempt to conceal the word switch.  Affiant avers this post is believed to be **Roberson** advertising to his followers the potential sale of a Glock 19 handgun with the Glock switch attachment included (See Exhibit D below).

(ECF No. 21-1, ¶ 10, PageID #83.)  A screenshot of the Instagram story post was attached to the affidavit:



(*Id.*, PageID #91.)

The parties did not address Paragraph 10 in their papers.  At oral argument, the Court raised it.  Defendant did not argue that this paragraph contained any false or misleading statement or omitted information.  Defendant conceded that if Paragraph 10 by itself would establish probable cause, that might be an issue.  The United States views this post as a "pretty explicit advertisement online" to sell a Glock with a switch attached.  On its face, this post shows Mr. Roberson directly soliciting buyers of a Glock 19 with a switch attached and supplies probable cause.

### II.A.2.d. Paragraph 11

Paragraph 11 of the affidavit describes a story posted to Mr. Roberson's Instagram account that the affiant interpreted as a solicitation for the sale of Glock switches:

> Affiant avers on Tuesday, November 22nd, 2022, at approximately 1210 hours, he was monitoring **Shyheim Roberson**'s Instagram account **4eg_shobbs** and observed an additional story post.  Affiant avers this

story post displayed the script "switches tap in".  Affiant avers through his experience, the use of the phrase 'tap in' is commonly utilized on Instagram.  Affiant avers in this instance of the phrase, Roberson is encouraging any interested parties to reach out to him about purchasing a Glock switch (See Exhibit E below).

(ECF No. 21-1, PageID #83.)  A screenshot of the Instagram story post was attached to the affidavit:



(*Id.*, PageID #92.)

Defendant argues that the affiant "fails to acknowledge" that the story post includes emoji of game controllers, referencing one of Nintendo's gaming systems called a Switch and that the affiant "fails to explain" why he concluded the post was about Glock switches instead of Nintendo Switches.  (ECF No. 21, PageID #75.)  The United States counters that the affiant included a screenshot of the Instagram post as an exhibit to the affidavit, so Mr. Roberson "has no basis to claim" that the affiant

"hid the reference to video games from the reviewing judge." (ECF No. 39, PageID #184.)

An affiant has no obligation to rebut every potential innocent explanation. This post might offer Glock switches for sale or play off the double meaning of the term to gain attention. But it supplies a fact that the judge may fairly consider in the determination of probable cause.

### II.A.2.e. Paragraph 16

Paragraph 16 describes a video posted to Mr. Roberson's Instagram account in which he holds a gun with the rear slide plate removed and a black square there, where a Glock switch would be:

> Affiant avers on Saturday, December 17th, 2022, **Shyheim Roberson** posted a video on his public Instagram page. The video shows **Roberson** standing in a room talking on the phone with what appears to be a tan Glock semi-automatic firearm. Additionally, throughout the duration of the video, there is a text box prominently displayed along the top of the screen that reads, "When a random number call and say I heard you gotta switch." Affiant avers he screen recorded the Instagram video and was able to slow the video down frame by frame. Affiant avers once the video was slowed down, he was able to stop the video when **Roberson** is holding the tan handgun with the side profile of the handgun fully displayed. Affiant avers while the firearm's side profile is shown, he observed a small black square shaped object attached on the rear slide plate of the tan handgun (See Exhibit F below). This object is located on the rear slide plate of the handgun and is consistent in appearance with the Glock switches **Roberson** has previously posted. Affiant avers that, in this instance, the Glock-switch is observed on a different tan Glock semi-automatic handgun. Affiant avers this is noteworthy because it demonstrates that **Roberson** is capable of securing the Glock-switch to multiple different firearms.

(ECF No. 21-1, PageID #84–85.) A screenshot from the Instagram video was attached to the affidavit:



(*Id.*, PageID #93.)

Defendant describes the video as showing a wooden block secured with black electrical tape to the back of his tan handgun, which he removed and threw in a trash can during the video.  (ECF No. 21, PageID #78.)  Defendant argues that, as a firearms expert, the affiant would know that removing a Glock switch requires tools, so could not be removed as easily as the video depicts.  (*Id.*, PageID #74.)  Defendant "does not dispute" that he is using the subject of Glock switches to provide interest in his social media accounts or that he recorded this video in his residence.  (*Id.*, PageID #78.)  He claims this video is a parody intended to generate social media engagement (*id.*, PageID #74) and that talking about Glock switches is different than having them.

The United States argues that the video "does not show" that the square-shaped object actually is a wood block attached with black electrical tape and that the affiant's description in the affidavit is consistent with what the video shows.  (ECF

No. 39, PageID #186.)   The United States adds that the affiant was "careful to explain" that the square-shaped object was consistent with Glock switches that Mr. Roberson previously possessed, but the affiant did not say that the square-shaped object was a real Glock switch.  (*Id*.)  The United States goes on to argue that the color of the square-shaped object should not matter for purposes of probable cause. (*Id*., PageID #186–89.)  Lastly, the United States argues that even if the video were a parody, it still supports the affiant's conclusion that Mr. Roberson "was involved in selling Glock switches[] and that there was a nexus between that crime and Roberson's apartment."  (*Id*., PageID #189.)

As Defendant notes, this video does not show a real Glock switch.  Because of their illegality, any person who posted a video with a real Glock switch would invite a federal prosecution.  Accordingly, it should not be surprising that a person who wished to traffic in Glock switches would use a stand-in for one in a video.  Indeed, in this stylized video or dramatic reenactment, the text in the screenshot shows, at minimum, that Mr. Roberson wants a reputation of being a Glock-switch guy. Because the video does not show a real Glock switch, the Court disregards the last two and a half sentences of Paragraph 16 in reviewing the probable cause determination.  Without those sentences, this video still invites viewers to get Glock switches from Mr. Roberson.

### II.A.2.f. Paragraph 18

Paragraph 18 describes a story posted to Mr. Roberson's Instagram account with the words, "New Years kick it's?  Bring it in with a switch."  (ECF No. 21-1, PageID #95).  The paragraph reads:

18

Affiant avers on Friday, December 30th, 2022, he was monitoring **Shyheim Roberson's** Instagram account **4eg_shobbs** and observed an additional story post.  This post displayed a black screen with the script that stated, "New Years kick it's?" The post included additional text underneath the aforementioned question that stated, "Bring it in with a switch." (See Exhibit H).  Affiant avers the subsequent text in this tory post is referring to a Glock switch.  In the Affiants experience, it is common for many individuals to shoot their firearms off to bring in the New Year.  Based on the text within this story post, it appears that **Roberson** is hinting at the notion of celebrating the New Year by firing off a fully automatic Glock handgun.

(*Id.*, PageID #86.)  A screenshot of the Instagram story post was attached to the affidavit:



(*Id.*, PageID #95.)

Defendant argues that the affiant offers no support for his conclusion that "Mr. Roberson is hinting at" celebrating the New York by firing off a handgun with a Glock switch.  (ECF No. 21, PageID #75.)  The United States argues that the affiant's experience "put him in a position to know about people firing guns on New Year's

19

Eve" and that such gunfire "is not an uncommon occurrence in Cleveland."  (ECF No. 39, PageID #190–191.)

Nothing in this post contains false or misleading information, and the affidavit attached the screenshot.  With this information, the State judge could factor this post into his own determination of probable cause.

### II.A.2.g. Paragraph 19

Paragraph 19 describes a story posted to Mr. Roberson's Instagram account of a Glock with switch:

> Affiant avers on Tuesday, January 3rd, 2023, at approximately 0210 hours, he observed a new story post added to **Shyheim Roberson**'s Instagram account **4eg_shobbs**.  Affiant avers on the story post he observed an individual sitting in what appears to be the driver's seat of an unknown vehicle.  Additionally, the story post shows the individual wearing a glove and holding a black/dark gray Glock semi-automatic handgun with an extended magazine and a Glock switch attached [to] the rear slide plate.  The story post also includes a green box with white text that reads, "I don't own the rights to this video".  Affiant avers the Glock switch shown in the story post has an engraving that appears to be the Flock company logo.  Affiant avers that although **Roberson** claims to not "own the rights to the video" story post, affiant firmly believes it is **Roberson** who is in possession of the Glock handgun equipped with the Glock switch.  The size, color, and engraving on the Glock switch on display in this post is consistent with the Glock switches observed on aforementioned posts made on **Roberson**'s Instagram account (See Exhibit I below).

(ECF No. 21-1, PageID #86.)  A screenshot of the Instagram story post was attached to the affidavit:



(*Id.*, PageID #96.)

Defendant concedes that this paragraph contains "indisputable evidence of a Glock switch[]." (ECF No. 21, PageID #75.)  However, he maintains that "[t]here is no evidence that switch was in Mr. Roberson's possession" (*id.*, PageID #76) and that only one of the "aforementioned posts"—the one described in Paragraph 9—includes a Glock switch.  The United States argues that "[n]othing about that statement is false or misleading" because the affiant did not exaggerate the similarities.  (ECF No. 39, PageID #192–93.)  The affiant never said that the firearms were the same firearms.  (*Id.*)  He concluded only that they were "consistent in appearance."  (*Id.*)

Even if Mr. Roberson is not the person holding the Glock with the switch in this post, he is associating himself with the conduct through his personal Instagram account.  Beyond that, however, the post contains little beyond the affiant's naked assertions based on suspicion, but nothing more.  Whatever the appearance of the

21

gun and the switch in this post, the affiant could say little more than the switch is consistent with one in another post by Mr. Roberson.  For these reasons, the Court will not consider Paragraph 19, except to the extent that is shows Mr. Roberson posting content about Glock switches on one of his social media accounts.

### II.A.3. Probable Cause

Disregarding Paragraph 9 in its entirety, the last two and a half sentences of Paragraph 16, and much of Paragraph 19, the balance of Mr. Roberson's social media activity, as reflected in the affidavit presented to the State judge, allows a determination of probable cause.  Specifically, the posts make it probable that Mr. Roberson can supply a person with a Glock switch, a device which is illegal under federal law.  Indeed, Paragraph 10 is an open solicitation inviting viewers who might be interested in such a device to contact Mr. Roberson.  Therefore, the inquiry shifts to whether there is a fair probability that contraband (Glock switches) or evidence of a crime (trafficking in Glock switches) will be found in a particular place (Mr. Roberson's residence).

### III.B. Nexus

There must be "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  "There must, in other words, be a nexus between the place to be searched and the evidence sought." *United States v. Brown*, 828 F.3d 375, 381 (6th Cir. 2016) (citing *United States v. Carpenter*, 360 F.3d 591, 594 (2004) (en banc)).

Defendant argues that the affidavit "provides no evidence" of him "ever possessing a Glock switch." (ECF No. 21, PageID #77–78.)  The United States argues

22

that the affidavit "set[] forth how Roberson was displaying Glock switches and advertising them for sale across a number of social media posts, which spanned several months" and established Mr. Roberson's residence. (ECF No. 39, PageID #197.)

Upon review, the affidavit establishes probable cause that Mr. Roberson was, at a minimum, involved with Glock switches. Based on his experience, the affiant opined that "persons who traffic in illegal firearms frequently keep weapons . . . on or about their person, or within their possession." (ECF No. 21-1, ¶ 21, PageID #87.) Also, he attested that "persons who participate in criminal activity and traffic illegal firearms in the course of this criminal activity frequently keep records of illegal transactions, money, firearms, weapons, narcotics, and other contraband in safes" and in personal electronics. (*Id.*, ¶¶ 20 & 22, PageID #86–87.) Additionally, the screenshot of the video post described in Paragraph 16 shows Mr. Roberson standing in what might reasonably be inferred to be his residence. (*Id.*, PageID #93–94.) Indeed, the affiant detailed his internet search which supported his conclusion that the location of this video is consistent with Mr. Roberson's residence. (*Id.*, ¶ 17, PageID #85.) Defendant does not dispute that he recorded this video in his residence. (ECF No. 21, PageID #78.) Accordingly, the affidavit establishes a connection between Mr. Roberson's social media activity, which provide the facts that establish probable cause, and Mr. Roberson's residence. Therefore, the nexus requirement is satisfied.

## II.     Request for a *Franks* Hearing

There are two bases for an evidentiary *Franks* hearing:  false statements and omissions.  Each basis has its own standard.  A defendant is entitled to a *Franks* hearing regarding a false statement "if and only if (1) there is a substantial preliminary showing that specified portions of the affiant's averments are deliberately or recklessly false *and* (2) a finding of probable cause would not be supported by the remaining content of the affidavit when the allegedly false material is set to one side."  *United States v. Campbell*, 878 F.2d 170, 171 (6th Cir. 1989).  A defendant is entitled to a *Franks* hearing based on an omission where there is a preliminary showing that the affiant "engaged in 'deliberate falsehood' or 'reckless disregard for the truth' in omitting information" and a finding of probable cause would not be supported by the affidavit including the omitted portions.  *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997) (quoting *United States v. Bonds*, 12 F.3d 540, 568 n.26 (6th Cir. 1993)).  "Although material omissions are not immune from inquiry under *Franks*, we have recognized that an affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information" because "an allegation of omission 'potentially opens officers to endless conjecture about investigative leads, fragments of information, or other matter[.]'"  *Id.* (quoting *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990)).

Defendant requests a *Franks* hearing on both grounds.  He argues that a hearing will allow him to develop evidence to bolster his arguments for suppression.  Except as discussed with respect to three paragraphs of the affidavit—Paragraph 9,

24

Paragraph 16, in part, and Paragraph 19, in part—Defendant does not make a showing that would open the door to a *Franks* hearing.  In the Court's view, a hearing is not necessary based on these three paragraphs because, even disregarding them in their entirety (in the case of Paragraph 9), nearly in their entirety (in the case of Paragraph 19) or partially (in the case of Paragraph 16), the affidavit still supports a determination of probable case.

## CONCLUSION

The standard of review compels deference to the State judge's determination of probable cause.  Reading the affidavit in support of the search warrant without the potentially offending material, the State judge had a substantial basis for concluding that evidence of Glock switches would be found in Mr. Roberson's residence.  In light of the high burden for a *Franks* hearing, the Court cannot say that Defendant meets that burden on the totality of the facts and circumstances in this case.

For all the foregoing reasons, the Court **DENIES** Defendant's motion to suppress without a *Franks* hearing.  (ECF No. 21.)

**SO ORDERED.**

Dated:  December 1, 2025

_____
        J. Philip Calabrese
        United States District Judge
        Northern District of Ohio